UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

**JAMES N KITTLING**                       **CASE NO.  1:17-CV-01637**

**VERSUS**                                 **JUDGE DRELL**

**BOISE CASCADE L L C**                    **MAGISTRATE JUDGE PEREZ-MONTES**

<u>MEMORANDUM RULING</u>

Before the court is a motion for summary judgment filed in the above-captioned
employment discrimination suit by defendant, Boise Cascade, LLC ("Defendant" or "Boise").
(Doc. 26).  For the reasons expressed below, the court finds that the motion should be GRANTED
and, accordingly, all claims by plaintiff, James N. Kittling ("Plaintiff" or "Kittling") should be
DENIED and DISMISSED with prejudice.

I.      Relevant Facts

Boise hired Kittling, an African-American male, into a "Utility Production" position at its
Lena, Louisiana plant on or about September 13, 2016.[1]  As is its practice with new employees,
Boise advised Kittling that he must complete a 120-day probationary period at the start of his
employment, during which time he could be terminated if he accrued two (2) instances of tardiness.[2]

Several weeks after beginning his employment, Boise offered Kittling the opportunity to
move from one production team to another in order to avoid a potential layoff.[3]  Kittling accepted
the opportunity and moved to what the parties refer to as "Team 2."[4]  On November 18, 2016,
Kittling was tardy arriving to work and received a disciplinary write up from his supervisor, Arthur

---

[1] Complaint (Doc. 1) at ¶ 7; Deposition of Kittling (Doc. 26-4) at 95:15-17.
[2] Declaration of Sepulvado (Doc. 26-8) at ¶¶ 6-7.
[3] Doc. 26-4 at 124:18-125:9.
[4] <u>Id.</u>; Declaration of Fields (Doc. 26-12) at ¶ 9.

1

Fields ("Fields"), for this infraction.[5]  On December 6, 2016, Kittling was absent from work due to a flare-up of his gout – a condition he claims he has suffered from since approximately age 17 and for which he takes medication.[6]  Upon returning to work on December 7th, Kittling presented Boise with paperwork received during his visit to urgent care.[7]  Consequently, Kittling received another disciplinary write up from Fields.[8]  At the end of his shift on December 7th, he was told not to return to work until further notice.  On December 12, 2016, Lori Sepulvado ("Sepulvado"), a human resources employee with Boise, notified Kittling that his employment with Boise was terminated effective December 7th for attendance violations during his probationary period.[9]

Kittling completed an EEOC Intake Questionnaire ("Questionnaire") on January 30, 2017.[10]  Kittling's questionnaire responses specified both race and disability as causes for his claim of employment discrimination against Boise.[11]  It is unclear from the record whether or not Kittling signed and returned the EEOC Charge of Discrimination ("Charge"), forwarded to him with the EEOC letter dated June 26, 2017.[12]  In any event, the EEOC issued a right to sue letter, dated September 19, 2017, dismissing Kittling's charge and advising him of his right to file suit against Boise.[13]

Kittling timely filed suit against Boise on December 19, 2017.[14]  Kittling's complaint asserts federal claims for employment discrimination under both Title VII of the Civil Rights Act

---

[5] Id. at ¶ 10.
[6] Doc. 26-4 at 98:7-17.
[7] Id. at 153:22-154:9.
[8] Id. at 152:13-17.
[9] Doc. 26-8 at ¶ 11.
[10] Doc. 26-23.
[11] Id. at p. 2 of 4.
[12] Doc. 32 at p. 5; Doc. 26-24.
[13] Doc. 26-21.
[14] Doc. 1.

of 1964 ("Title VII")[15] and the Americans with Disabilities Act ("ADA"),[16] as well as companion Louisiana law claims under Louisiana's Employment Discrimination Law ("LEDL)[17] and the Louisiana Whistleblower Law.[18] While Kittling's claim asserts a claim for retaliation under the LEDL to the extent such a claim is cognizable, Louisiana does not recognize this cause of action, so none is deemed asserted.[19]

Boise timely answered the suit[20] and seeks summary judgment dismissing all remaining claims against it. Boise's motion, now fully briefed, is properly before the court for consideration and disposition.

II.     Applicable Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "We consider all evidence 'in the light most favorable to the party resisting the motion.'" Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 675, 680 quoting Trevino v. Celanese Corp., 701 F.2d 397, 407 (5th Cir. 1983). However, the non-moving party does not establish a genuine dispute with "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). It is important

---

[15] 42 U.S.C. § 2000e, et seq.
[16] 42 U.S.C. § 12101, et seq.
[17] La. R.S. 23:323 and 23:332.
[18] La. R.S. 23:967.
[19] Glover v. Smith, 478 Fed.Appx. 236, 244 (5th Cir. 2012) citing Lowery v. Dresser, Inc., 893 So.2d 966 (La. App. 3 Cir. 2005)
[20] Doc. 11.

to note that the standard for a summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, *and* (2) the movant is entitled to judgment as a matter of law.

III.     Analysis

Exhaustion of Administrative Remedies

Boise's motion urges dismissal of Plaintiff's claims based on Kittling's alleged failure to exhaust administrative remedies prior to filing this suit.  Citing 29 C.F.R. § 1601.3, Boise points out that Kittling's unsigned, unverified charge does not meet the regulation's requirements that the charge be in writing, signed and verified.  Boise admits that it received a Notice of Charge, dated March 1, 2017, from the EEOC, but argues that this notice was insufficient to apprise it of the nature of the claims against it by Kittling prior to the filing of this suit and, thus, Kittling's unsigned and unverified charge should not be deemed as fulfilling the important purposes of exhaustion in this case.[21]

In response, Kittling offers no concrete assertion as to whether he signed and returned the charge to the EEOC but relies instead on the EEOC's issuance of a right to sue letter in September 2017.[22]

Before a plaintiff may file suit in federal court on claims of employment discrimination under Title VII, he must first exhaust his administrative remedies.[23]  Exhaustion is not a jurisdictional issue but is a condition precedent to bringing a claim under Title VII, nonetheless.[24] Exhaustion requires the timely filing of a charge of discrimination with the EEOC and the receipt of a notice of right to sue.[25]

---

[21] Doc. 26-21; Doc. 26-2 at pp. 10, et seq.
[22] Doc. 32 at p. 5, citing Deposition of Kittling at "p. 201-4."
[23] Taylor v. Books a Million, 296 F.3d 376, 378-79 (5th Cir. 2002).
[24] Id.
[25] Id.

4

The instant case presents a unique fact pattern regarding the issue of exhaustion. While no evidence exists to support Kittling's execution of a signed, verified, formal Form 5 charge of discrimination, it's clear that the EEOC did issue a notice of right to sue.[26] Regardless of whether Kittling's signed formal charge was not returned or was somehow lost along the way to being filed by the EEOC, it's clear from the record that it is EEOC policy to issue a right to sue letter when a claimant fails to respond to a request to sign and return a Form 5 formal charge.[27] Given that the EEOC did issue a right to sue letter in this case and Boise admits that it received a Notice of Charge advising it of Kittling's claims against it, we find that dismissal on the grounds of failure to exhaust would be inappropriate in this case.

<u>Employment Discrimination – McDonnell Douglas Analysis</u>

Turning to the merits, we begin by noting Kittling's voluntary dismissal of both his retaliation and whistleblower claims.[28] Consequently, Kittling's remaining allegations of employment discrimination are based on race and disability. Whether based on race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII")[29] or on disability discrimination under the Americans with Disabilities Act ("ADA"),[30] the court's analysis is rooted in the *McDonnell Douglas* burden shifting framework derived from the United States Supreme Court's seminal opinion <u>McDonnell Douglas Corp v. Green</u>, 411 U.S. 792 (1973).

Boise contends that Kittling's claims under both theories fail at all stages of the requisite *McDonnell Douglas* analysis and, for that reason, summary judgment should be granted as to these

---

[26] Doc. 32 at p. 5.
[27] Doc. 26-24 at pp. 3-4 ("Before we initiate an investigate an investigation, we must receive your signed Chare of Discrimination (EEOC Form 5). Please sign and return the charge within thirty (30) days from the date of this letter. Under EEOC procedures, if we do not hear from you within 30 days or receive your signed charge within 30 days, we are authorized to dismiss your charge and issue you a right to sue letter allowing you to pursue the matter in federal court...").
[28] Doc. 32 at p. 3 n. 13.
[29] 42 U.S.C. § 2000e, <u>et seq.</u>
[30] 42 U.S.C. § 12101, <u>et seq.</u>

claims in its favor.  The *McDonnell Douglas* framework is employed by courts to evaluate employment discrimination claims supported only by circumstantial evidence.[31]  In such cases, the plaintiff is unable to show direct evidence of discrimination but must instead "raise the inference of discrimination."[32]  Under the *McDonnell Douglas* framework, the plaintiff first bears the burden of a *prima facie* showing of discrimination.  In order to make a *prima facie* showing regarding disability discrimination under the ADA, Kittling must demonstrate the following:  (1) that he has a disability or was regarded as being disabled; (2) that he was qualified for the job; (3) that he was subject to an adverse employment decision because of his disability.[33]  If the plaintiff successfully carries his burden, which is one of production and not persuasion, the *prima facie* stage, the employer must respond by articulating some legitimate, non-discriminatory reason for the adverse employment action.[34]  The burden then returns to the plaintiff, who may refute the employer's proffered reason by offering evidence that this reason is merely pretext for impermissible discrimination.[35]

Boise concedes for purposes of this motion that Kittling can demonstrate that he was either disabled or regarded as such, that he was qualified for the job at issue and that he suffered an adverse employment action when he was fired.[36]  Boise disputes Kittling's ability to offer evidence that his termination was based on his disability, however.  Specifically, Boise offers evidence that Kittling's supervisor, Fields, was unaware of Kittling's gout and that, in keeping with its well-publicized policy, other probationary employees who accrued two "occurrences" within the

---

[31] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

[32] Lawson v. AT&T Mobility Services, LLC, 2020 WL 1696308 (5th Cir. 2020) *citing* Thomas v. Johnson, 788 F.3d 177, 179 (5th Cir. 2015).

[33] Clark v. Champion Nat. Sec., Inc., 952 F.3d 570, 582 (5th Cir. 2020) *citing* Moss v. Harris Cty. Constable Precinct One, 851 F.3d 413, 417 (5th Cir. 2017).

[34] Caldwell v. KHOU-TV, 850 F.3d 237, 241-42 (5th Cir. 2017) (internal citations omitted).

[35] Id.

[36] Doc. 26-2 at p. 19.

probationary period were also fired.[37]  Kittling avers that Boise was aware of his gout via Mark Bossier, superintendent at Boise, and citing his own EEOC Questionnaire and the Boise Attendance/Performance Evaluation form, which constituted a "final written warning with suspension" following his second occurrence during probation.[38]  After reviewing the proffered evidence, the court finds that Kittling fails to satisfy his *prima facie* burden as to disability discrimination.  Given Kittling's failure to establish the required *prima facie* case for disability-based employment discrimination under the ADA, we find dismissal of such claim appropriate.

Assuming for the sake of this motion that Kittling did convey to Bossier the nature and severity of his medical condition during his interview, we agree with Boise that Kittling does not allege that he asked for any reasonable accommodation.[39]  Where a plaintiff's claim of disability discrimination is based in part on an employer's failure to provide reasonable accommodation under the ADA, the plaintiff bears the burden of showing that he made a "sufficiently direct specific request" for accommodation.[40]  An employer's obligation to accommodate a disability generally does not arise until the employer receives a request for accommodation.[41]  We find that Kittling's allegations and evidence fail to make out a viable ADA accommodation claim in this case.  Any such purported claim will be dismissed.

Moreover, there is no evidence to suggest that Kittling was treated disparately based on his disability under the rules applicable to probationary employees.[42]   A plaintiff advancing a

---

[37] Id. at pp. 19-21 *citing* Declaration of Fields at ¶14 and Declaration of Peek at ¶ 4.
[38] Exhibit M (Doc. 26-15) and Exhibit U (Doc. 26-23); Deposition of Kittling at 97:11-98:20.
[39] Doc. 32 at p. 5; Doc. 26-2 at p. 3; Deposition of Kittling at pp. 97-98.
[40] Dugger v. Stephen F. Austin State Univ., 232 F.Supp.3d 938, 958 (E.D. Tex. 2017) *quoting* Nathanson v. Med. College of Pa., 926 F.2d 1368, 1381 (3rd Cir. 1991) *and* Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 795 (1st Cir. 1992).
[41] Amedee v. Shell Chemical LP – Geismar Plant, 384 F.Supp.3d 613, 642-43 (M.D. La. 2019) *citing* Loulseged v. Akso Nobel Inc., 178 F.3d 731, 736 n. 5 (5th Cir. 1999).
[42] Plaintiff does not dispute and ample evidence suggests that Boise's probationary employee orientation made clear to Kittling that he and all other probationary employees were not permitted more than one occurrence of tardiness or absence. Doc. 26-2 at p. 3 n. 18.

disparate treatment claim based on disability must prove that, in addition to the uncontested elements discussed above, he was treated less favorably than non-disabled employees.[43]  Kittling's brief presents no argument or evidence tending to show that he was treated less favorably than other non-disabled probationary employees.  Thus, Kittling fails to carry his burden of proof as to any purported ADA disparate treatment claim and dismissal is appropriate.

As to all three purported claims discussed above, Kittling's *prima facie* case was found deficient, warranting dismissal.  We note that, even if this were not the case, dismissal may still be result, as we agree that Kittling offers no proof of pretext to rebut Boise's legitimate, non-discriminatory motive for his termination.  Boise establishes that it's standard practice as to probationary employees is to enforce strict attendance regulations.  This is supported by the testimony of Sepulvado affirming that all new hires were briefed on the rules applicable to probationary employees, including the one at issue in this suit.[44]  Sepulvado attested to Boise's practice of providing orientation training, including PowerPoint presentations and an employee handbook with this information to each new employee.[45]  Plaintiff offers no evidence of pretext to refute Boise's assertion that Kittling's termination was due to the application of its well-publicized probationary employee attendance policy.

We now turn to Kittling's race-based employment discrimination claim.  A plaintiff asserting a Title VII claim based on race discrimination must demonstrate a *prima facie* case under the *McDonnell Douglas* framework.  In keeping with other employment discrimination theories, race-based discrimination claims require *prima facie* proof that: (1) the plaintiff is a member of a protected class; (2) was qualified for the position; (3) was subjected to an adverse employment

---

[43] Mzyk v. North East Independent School Dist., 397 Fed. Appx. 13, 16 n. 3 (5th Cir. 2010) *citing* Aldrup v. Caldera, 274 F.3d 282, 286 (5th Cir. 2001) *and* McInnis v. Alamo Cmty. Coll. Dist., 207 F.3d 276, 279-80 (5th Cir. 2000).
[44] Doc. 26-8 at pp. 2-3.
[45] Id.

8

action; and (4) was replaced by or treated less favorably than someone outside his protected class.[46] As discussed above, the parties agree for the purpose of this motion that Kittling fulfills the first three (3) elements and, thus, our analysis centers on whether Kittling demonstrates the fourth and final element of his requisite *prima facie* case regarding race-based employment discrimination.

Kittling's brief and deposition testimony suggest that his theory in this case is one of disparate treatment based on race, rather than of being replaced in his position by a person outside of his race. We reach this conclusion via Kittling's representation that he believed that other employees were not disciplined as he was for arriving late to their shift.[47] Specifically, Kittling testified that on November 18, 2016 he was treated less favorably than two other employees, Dalton Christy ("Christy") and Kenneth LNU ("LNU"). Christy is Caucasian, while LNU is African-American.[48] Kittling claims that he held the door to the break room open for Christy and LNU and, in doing so, noted that they were even later than he in arriving to clock in.[49] Kittling recalls Christy explaining to him that he was "running late."[50] After gathering his equipment and reporting to the factory floor to begin his shift, Kittling was summoned to Fields' office and written up for tardiness.[51] Kittling testified that neither Christy, nor LNU received write ups for occurrences that day, though they clocked in behind him, evidencing disparate treatment, particularly as to Christy.[52]

Boise denies that Kittling's testimony satisfies the fourth *prima facie* element for race-based employment discrimination. Boise points out that LNU, as noted by Kittling's own

---

[46] Melvin v. Barr Roofing Co., 2020 WL 1696121 *3 (5th Cir. 2020) *quoting* Haire v. Bd. of Sup'rs. of La. State Univ. Agric. & Mech. Coll., 719 F.3d 356, 363 (5th Cir. 2013).
[47] Doc. 32 at pp. 3-4; Deposition of Kittling at pp. 144-147.
[48] Deposition of Kittling at 142, 144.
[49] Id. at 145.
[50] Id.
[51] Id. at 146.
[52] Doc. 32 at p. 4.

testimony was not a probationary employee at the time in question, making him subject to differing attendance rules than both Kittling and Christy, though it notes that there is no differing standard for what constitutes a "late" arrival among probationary and non-probationary employees.[53] Since LNU is not a probationary employee, argues Boise, any comparison between disciplinary action taken against LNU and Kittling is irrelevant.[54]

Boise characterizes Kittling's testimony regarding disparity between Boise's treatment of him and that of fellow probationary employee Christy as inadmissible hearsay.[55] Boise points out that Kittling offers no proof that Christy was not disciplined for occurrences while a probationary employee, other than this single, inadmissible, hearsay recollected account.[56]

Finally, Boise asserts that, given that Fields was the decision maker as to whether Kittling would be written up for his tardiness on the date in question and Fields himself is also African American, Kittling's disparate treatment claim must fail.[57]

Kittling's response highlights testimony in which he describes his recollection that certain unnamed Caucasian employees and perhaps some African American employees arrived late, but were not written up.[58] Kittling's brief argues that this testimony should be afforded weight as evidence of disparate treatment of Kittling as compared to similarly situated probationary employees.[59]

We have carefully reviewed the filings in this matter and find that Kittling fails to fulfill his *prima facie* burden as to his race-based employment discrimination claim. While we assume for these purposes that Kittling demonstrates the first two elements, we find he fails to show that

---

[53] Doc. 26-2 at p. 15.
[54] Id.
[55] Id. at p. 16.
[56] Id.
[57] Id. at n. 99.
[58] Doc. 32 at p. 4 citing Deposition of Kittling at 148:13-149:6.
[59] Id.

he suffered an adverse employment action. Kittling's testimony and brief are specific regarding the bases for his various theories of recovery in this case and he is represented by counsel. Kittling's testimony and brief allege that Boise's discrimination against him on November 18, 2016 was based on his race. That incident culminated in Kittling receiving a write up from his supervisor Fields, also African American. A plaintiff alleging employment discrimination must show an adverse employment action, to include "ultimate employment decisions" such as "hiring, firing, demoting, promoting, granting leave and compensating."[60] Thus, Kittling fails to satisfy the third element of his *prima facie* burden.

Assuming Kittling could show he suffered an adverse employment action, his claim would still fail as to the fourth *prima facie* element. Kittling's vague testimony alleging disparate treatment has little probative value in demonstrating racial animus given the fact that Fields, who is also African American, was the decision maker responsible for applying the attendance rules to Kittling. Moreover, Kittling fails to offer evidence tending to show that Christy, the Caucasian employee with whom he seeks to compare himself in this motion, was similarly situated for purposes of misconduct.[61] Without evidence and argument from which the court might compare the two employees, the court would not be able to make finding that this element of disparate treatment was satisfied by Kittling's testimony. Kittling's summary statements do not offer evidence that he and co-worker Christy were similarly situated or that their disciplinary records or alleged infractions on November 18, 2016 were so "nearly identical" as to raise the inference of discrimination.[62]

---

[60] Thompson v. City of Waco, Tex., 764 F.3d 500, 503 (5th Cir. 2014).
[61] Perez v. Texas Dept. of Crim. Justice, Inst. Div., 395 F.3d 206, 213 (5th Cir. 2004) *citing* Barnes v. Yellow Freight Sys. Inc., 778 F.2d 1096, 1101 (5th Cir. 1985) ("holding that a presumption of discriminatory intent is raised for purposes of a disparate treatment claims where 'a supervisor of one race treats employees of the same race more favorably than similarly situated employees of another race under circumstances that are essentially identical..").
[62] Id. quoting Little v. Republic Ref. Co., 924 F.2d 93, 97 (5th Cir. 1991) *and citing* Smith v. Wal-Mart Stores, 891 F.2d 1177, 1180 (5th Cir. 1990). The court notes that Kittling's burden at the *prima facie* stage is one of production

11

For the foregoing reasons, the court finds that Kittling's Title VII employment discrimination claim based on race lacks essential elements of proof and should be dismissed.

<u>Louisiana Law Claims</u>

The LEDL prohibits employment discrimination based on, *inter alia*, race and disability and provides a right of action against employers that violate its provisions.[63] This state counterpart is subject to the same analysis as Title VII claims.[64] Given the court's findings as to Kittling's Title VII and ADA claims, we also find dismissal of all remaining Louisiana law claims under the LEDL appropriate based on the same reasoning.[65]

IV.   CONCLUSION

Having considered the law and argument advanced by the parties, the court finds that Kittling's remaining claims against Boise under both Louisiana and federal law lack requisite *prima facie* elements and, having been properly challenged by summary judgment motion, should now be dismissed with prejudice.  The court will use a judgment in conformity with these findings.

Alexandria, Louisiana
April 24, 2020

DEE D. DRELL, JUDGE
UNITED STATES DISTRICT COURT

---

and not of persuasion, but summary statements unsupported by evidence are insufficient, even at this stage. <u>Matthews v. Pilgrims Pride</u>, 783 Fed. Appx. 346, 348 (5th Cir. 2019) *citing* <u>Brown v. City of Houston</u>, 337 F.3d 539, 541 (5th Cir. 2003).
[63] La. R.S. 23:301, <u>et seq.</u>
[64] <u>McCoy v. City of Shreveport</u>, 492 F.3d 551, 556 (5th Cir. 2007); <u>Wyerick v. Bayou Steel Corp.</u>, 887 F.2d 1271 (5th Cir. 1989).
[65] <u>DeCorte v. Jordan</u>, 497 F.3d 433, 437 (5th Cir. 2007); <u>Bell v. Hercules Liftboat Co.</u>, LLC, 524 Fed. Appx. 64 (5th Cir. 2013); <u>Baker v. Fed. Ex Ground Package System, Inc.</u>, 278 Fed. Appx. 322 (5th Cir. 2008) *citing* <u>Smith v. Amedisys, Inc.</u>, 298 F.3d 434, 448 (5th Cir. 2002).